UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CONTINENTAL CREDIT SYSTEMS, LLC, a Delaware Limited Liability Company, d/b/a Spectra Payments,<br><br>    Plaintiff,<br><br>    v.<br><br>APPLIED MERCHANT SYSTEMS WEST COAST, INC., a California Corporation,<br><br>    Defendant. | No. 12 C 1701<br>Judge James B. Zagel |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Continental Credit Systems, LLC, a Delaware limited liability company, has brought this action against Defendant Applied Merchant Systems West Coast, Inc., a California corporation, for tortious interference, defamation, unfair competition under 15 U.S.C. § 1125(a), deceptive trade practices under 815 ILCS 510/1, and common law unfair competition. Applied Merchant Systems ("AMS") has moved to dismiss for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(1), or, in the alternative, for improper venue under Fed.R.Civ.P. 12(b)(3). Because a forum selection clause in the parties' relevant Asset Purchase Agreement requires this action to be heard in California, AMS's motion to dismiss for improper venue is granted. AMS's motion to dismiss for lack of personal jurisdiction is therefore denied as moot.

**BACKGROUND**

Continental Credit Systems ("CCS") and AMS entered into an asset purchase agreement wherein AMS agreed to purchase, *inter alia*, a portfolio of credit card transaction processing

agreements that CCS had entered into with approximately 1400 merchants. CCS asserts that the Asset Purchase Agreement did not include sale of the credit card terminals (the hardware used to swipe patrons' credit cards) that CCS had provided to the merchants as part of the processing agreements. Accordingly, shortly after the purchase agreement was executed, CCS asserted the right it claims to the terminals by deducting their replacement cost ($1000) from the various merchants' bank accounts.[1]

Citing the Asset Purchase Agreement, AMS disputes CCS's right to the terminals. Upon learning of the action taken by CCS, AMS encouraged the affected merchants to direct their banks to treat the debits as fraudulent and request that the charges be reversed. Many of the merchants did so. CCS now argues, *inter alia*, that AMS's actions constituted tortious interference and defamation and seeks injunctive relief.

## DISCUSSION

AMS asserts that this action should be brought, if at all, in the state or federal courts of Ventura County, California, pursuant to the forum selection clause contained in the Asset Purchase Agreement. The clause states: "Any dispute, action, litigation or other proceeding concerning this Agreement shall be instituted, maintained, heard and decided in Ventura County, California." It is well-settled that contractual forum selection clauses are prima facie valid, *see M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *Sompo Japan Insurance, Inc. v. Alarm Detection Systems, Inc.*, 2003 WL 21877615 *1, (N.D.Ill., Aug 6, 2003) and the parties do not dispute the validity of the clause here. Rather, CCS asserts that this action simply does not trigger the forum selection clause, that is, that the claims brought do not "concern" the Asset

---

[1] The merchants also had the option to return the terminals, though the record does not indicate how many merchants elected to do so, and this dispute does not appear to involve those that did.

Purchase Agreement. I turn, then, to the meaning of the clause.

This forum selection clause is worded broadly, encompassing not just "litigation," but also "disputes," "actions," and "any other proceedings" that "concern" the agreement. To be sure, CCS has brought this action in tort, not in contract for breach of the purchase agreement. And, as CCS notes, the Seventh Circuit has rejected the notion that a "but for" relationship is all that is needed between a dispute and a given contract to trigger its forum selection clause. *See Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600, 602 (1994). But the Seventh Circuit has also recognized that a forum selection clause may compel dismissal of an action, even where the clause is implicated only by a defense raised in response to the claim, rather than the underlying claim itself. *See id.* at 601-02; *John Wyeth & Bro. Ltd. V. CIGNA Intern. Corp.*, 119 F.3d 1070, 1076 n. 5 (1997) (noting that, in *Omro*, "it was irrelevant to the panel that the forum selction clause had been implicated by means of a defense").

Here, AMS will defend its allegedly tortious conduct by challenging CCS's asserted right to the terminals.[2] AMS believes that CCS forfeited this right to the terminals under the Asset Purchase Agreement, which helps to explain, and could theoretically excuse, some of AMS's subsequent conduct. Adjudication of this dispute will consequently require review of the agreement. By its terms, the agreement's forum selection clause is triggered – this dispute "concerns" the Asset Purchase Agreement.

CCS maintains that its claims are independent of the agreement. The action, CCS contends, concerns only AMS's allegedly tortious conduct in connection with third party

---

2 For example, it is well settled, both in Federal and California State Law, that truth is an absolute defense to the tort of defamation. *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-17 (1991); *New York Times Co. v. Sullivan*, 376 U.S. 254, 278-79 (1964); *Fellows v. National Enquirer, Inc.*, 42 Cal.3d 234, 245-46 (Cal. 1986). Were the Asset Purchase Agreement found to have forfeited CCS's right to the terminals, as AMS argues, one could certainly conclude that a public assertion that CCS's subsequent conduct was improper is not defamatory.

3

contracts between CCS and various merchants. But the argument in CCS's brief asserting the proper understanding of the Asset Purchase Agreement belies their assertion that adjudicating its claims "will not require the construction or interpretation of the Purchase Agreement in any way." The parties espouse differing understandings of their respective obligations under the agreement. Because this dispute will need to be resolved to adjudicate at least some of the claims CCS has brought, the forum selection clause that both parties agreed to requires the action to be heard in Ventura County, CA.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss for improper venue is granted. Defendant's motion to dismiss for lack of personal jurisdiction is therefore denied as moot.

ENTER:

James B. Zagel
United States District Judge

DATE: October 18, 2012